IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HYDRAULICS INTERNATIONAL, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMALGA COMPOSITES, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-00535-PMW<br><br>Chief Magistrate Judge Paul M. Warner |

All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant Amalga Composites, Inc.'s ("Defendant") motion to dismiss for lack of personal jurisdiction, or, in the alternative, to change venue.[2] The court held oral argument on the motion on January 15, 2020.[3] Kenneth Parkinson and Peter Lattin appeared on behalf of Plaintiff Hydraulics International, Inc. ("Plaintiff"), and Patrick Harvey appeared on behalf of Defendant. At the conclusion of the hearing, the court took the motion under advisement. The court has carefully considered the parties' written submissions on the motion, as well as the oral

---

[1] ECF No. 14.

[2] ECF No. 10.

[3] ECF No. 28.

arguments presented by counsel at the hearing. Now being fully advised, the court grants the motion to dismiss.

## **BACKGROUND**[4]

Plaintiff is a Utah corporation with its principal place of business in Utah. Defendant is a Wisconsin corporation with its principal place of business in West Allis, Wisconsin. Plaintiff produces precision down-hole plug components for the oil and gas industry. These items are manufactured from fiberglass filament wound spools ("spools") and machined to an exact set of industry specifications. Defendant is a manufacturer of spools, which it produces for various customers, many of whom work in the oil and gas industry.

In or around May 2017, Plaintiff needed to identify a new manufacturer which could provide spools. Plaintiff first discovered Defendant through Defendant's website. The website included technical information for the spools but did not target or advertise to any one particular geographical market. Plaintiff initiated contact with Defendant and acquired its first batch of spools from Defendant in June 2017.

At the beginning of the parties' working relationship, Plaintiff sent Defendant its terms and conditions document. Plaintiff's terms and conditions contained a Utah forum selection clause. Plaintiff also initiated each purchase by sending Defendant purchase order forms with product specifications, quantity, and price terms and included the following language at the bottom of the

---

[4] The background facts, unless noted otherwise, are drawn from the Plaintiff's operative complaint and the parties' briefs and supporting declarations regarding the pending motion to dismiss. In reviewing the factual background of this case, the court is mindful that Plaintiff bears the burden of asserting a prima facie case of personal jurisdiction and "any factual disputes in the parties' affidavits must be resolved in [Plaintiff's] favor." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citations omitted).

sheet: "Commencing with this order signifies supplier's acceptance of this [purchase order] and its agreement with all HII Terms and Conditions, any applicable HII Quality Clauses."[5]

In response to Plaintiff's terms and conditions, Defendant sent Plaintiff its own terms and conditions. And in response to each and every purchase order, Defendant sent Plaintiff a sales acknowledgement order form and its terms and conditions. Defendant's terms and conditions contain a Wisconsin forum selection clause and describe the following terms of acceptance:

> AMALGA COMPOSITES, INC. ("Seller") shall sell the goods identified on the face of this order confirmation to customer, and customer shall purchase such 4 DocID: 4848-9006-4290.5 goods from seller, subject to these terms and conditions ("Terms"), and the rights of the parties shall be governed exclusively by these terms. Any term, condition and/or provision of customer's order which is any way inconsistent with these terms shall not be applicable hereto or binding upon seller. ***Customer, by accepting any goods covered by these terms, shall conclusively be deemed to accept these terms.*** Seller's failure to object to terms, conditions and/or provisions in any communication by customer will not be a waiver of any terms contained herein. ***If this order confirmation is issued in response to a prior purchase order or other writing submitted by customer to seller, and such form contains terms, conditions and/or provisions which are additional to, different from or vary these terms, seller's acceptance shall be expressly conditioned upon customer's assent to these terms.***[6]

After sending each sales order acknowledgement form to Plaintiff, Defendant shipped the requested spools to Plaintiff in Utah. Plaintiff accepted each shipment and paid the amounts due. Plaintiff claims the spools were defective and did not meet the technical specifications required under the contract. Plaintiff commenced this action against Defendant for breach of contract, fraudulent misrepresentation, and negligent misrepresentation.

---

[5] ECF No. 20 at 3 at ¶ 15.

[6] ECF No. 10 at 4 (emphasis added).

The parties' business relationship spanned 8 months between June 2017 and January 2018 wherein Plaintiff placed 10 orders and received over $330,000 in product from Defendant. Defendant approximates 3% of its sales come from Utah, and the majority of this 3% derives from the contract with Plaintiff. All of Defendant's remaining sales originate from states other than Utah.

The purchase orders were sent to Defendant in Wisconsin, were executed in Wisconsin, and did not contemplate any services to be performed outside of Wisconsin. The spools were manufactured in and shipped from Wisconsin. The parties did not have a relationship prior to the transactions at issue. The parties communicated via email and phone regarding order information throughout the relationship, and after November 2017, regarding the defective batches. Plaintiff's customer, Kraken Oil and Gas, LLC ("Kraken") participated in some phone conferences with the parties to provide input about its specific needs. Defendant sent a sales representative to Utah in February 2017 to discuss continuation of the business relationship.

Defendant moves to dismiss the complaint for lack of personal jurisdiction and/or to transfer venue under 28 U.S.C. § 1404(a). Specifically, Defendant asserts this court is without jurisdiction because Defendant never accepted Plaintiff's terms and conditions which contains the forum selection clause Plaintiff seeks to assert, and because Defendant lacks sufficient minimum contacts. Alternatively, Defendant moves to dismiss the fraudulent misrepresentation and negligent misrepresentation claims as barred by the economic loss rule.

## DISCUSSION

The parties do not dispute that the parties had a valid and enforceable contract and that the Uniform Commercial Code ("UCC") applies in this case. Defendant argues that the Utah and Wisconsin forum selection clauses are irreconcilable, and each is "knocked out" under the

UCC's battle of the forms analysis. Because no forum selection clause applies, Defendant argues, under the traditional jurisdictional analysis, the court is unable to establish general or specific jurisdiction over Defendant.

### A. Battle of the Forms

UCC section 2–207 governs contract formation where the parties in sales of goods exchange printed purchase order and acknowledgment forms but do not agree on all the terms of their contract. *See* UCC § 2-207; Utah Code § 70A-2-207.[7]

UCC section 2–207 provides:

> Additional Terms in Acceptance or Confirmation:
> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>   (a) The offer expressly limits acceptance to the terms of the offer;
>   (b) They materially alter it; or
>   (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any

---

[7] The court notes that any reference to UCC § 2-207 is interchangeable with Utah Code § 70A-2-207 for purposes of this order, as the language is identical.

supplementary terms incorporated under any other provisions of [this act].

UCC § 2-207. Under paragraph (1) of section 2–207, a seller's form response to a buyer's purchase order normally constitutes a "definite and seasonable expression of acceptance" if it repeats the terms of the buyer's order. According to the provision at the end of paragraph (1), if the seller's response does not state that acceptance is "expressly made conditional" on the buyer's assent to its terms, that response operates as an acceptance and a contract is formed. *See, e.g.*, *Bayway Ref. Co. v. Oxygenated Mktg. & Trading, A.G.,* 215 F.3d 219, 223 (2d Cir. 2000); *JOM, Inc. v. Adell Plastics, Inc.,* 193 F.3d 47, 53 (1st Cir. 1999); *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1166 (6th Cir. 1972).

If, however, the seller's response is "expressly made conditional on assent" to the divergent terms, then the provision in paragraph (1) provides that no contract is formed, and instead the seller's response constitutes a counteroffer. *See JOM, Inc.,* 193 F.3d at 53; *Dorton,* 453 F.2d at 1166. If the buyer does not expressly assent to the seller's terms and the parties proceed with the transaction as if they have a contract, then paragraph (3) provides that their performance results in formation of a contract. *See* UCC § 2–207(3). The terms of the contract are the terms that the parties' forms agree on, plus any terms supplied by the UCC. *See id.* "All of the terms on which the parties' forms do not agree drop out" of the contract. *Diamond Fruit Growers, Inc. v. Krack Corp.,* 794 F.2d 1440, 1444 (9th Cir. 1986).

Here, the parties exchanged purchase orders and sales order acknowledgment forms with incorporated or attached terms and conditions that contained competing forum selection clauses. Defendant expressly conditioned their acceptance to Plaintiff's assent to the terms of Defendant's terms and conditions. The parties' combined writings did not establish a contract

under section 2-207(1) because Plaintiff did not expressly assent to Defendant's different terms. The parties proceeded with their transactions as if they had a contract, which led to the formation of a contract under section 2-207(3). Any terms that the parties' forms agreed on became part of the contract, and conflicting terms knocked each other out. The parties' forum selection clauses conflict because each clause establishes jurisdiction in a different fourm. As a result, neither party's forum selection clause became part of the contract.

### B. Personal Jurisdiction

When the court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted).

> The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'

*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Before this court can assert personal jurisdiction over a defendant, the court must determine "(1) whether the applicable [state long-arm] statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quotations and citations omitted). Utah's long-arm statute is "coterminous with the Due Process Clause"; therefore, the Court need only "conduct a single inquiry" into whether Defendant's contacts with Utah satisfy due process. *Yellowbear v. Ashe*, 612 Fed. App'x 918, 921 (10th Cir.

2015); *see* Utah Code Ann. §§ 78B-3-205, 78B-3-201(3); *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 951 (Utah 2008) (holding that any set of circumstances that satisfies due process will also satisfy Utah's long-arm statute) (quotations and citations omitted). Depending on the nature and extent of the Defendant's contacts with the forum, the court may exercise general or specific personal jurisdiction. *See Yellowbear*, 612 Fed. App'x at 921.

        1.        General Jurisdiction

General jurisdiction requires that the defendant have continuous and systematic contacts with the forum state. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Plaintiff argues general jurisdiction is appropriate because Defendant engaged with a business that conducts business in Utah, shipped products, and sent a representative to the state; partook in voluminous communications with Plaintiff; and Utah made up approximately 3% of Defendant's sales portfolio. The court disagrees. These activities, and the frequency and context in which they took place throughout the relationship, are not the kind of substantial and continuous local activities necessary to render Defendant generally present in the state of Utah. *See, e.g., Soma Med. Int'l*, 196 F.3d at 1296-97*; Beck v. D'Amour S.A.,* 923 F. Supp. 196, 199–200 (D. Utah 1996); *Frontier Fed. Savings & Loan Ass'n v. National Hotel Corp.,* 675 F. Supp. 1293, 1296 (D. Utah 1987); *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 931 (Utah Ct. App. 1998). Accordingly, this court does not have general jurisdiction over Defendant.

### 2. Specific Jurisdiction

Absent systematic and continuous activity in the forum state, the court must find minimum contacts exist to assert specific jurisdiction over Defendant. The court's specific personal jurisdiction inquiry is two-fold. First, the court must determine whether Defendant has such "minimum contacts" with the forum state "that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980). Second, if Defendants contacts are sufficient, the court must then consider whether the exercise of personal jurisdiction over Defendant would offend "'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

"[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp.*, 471 U.S. at 472). The minimum contacts inquiry is context specific. In contract cases, the court asks "whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citations omitted). Importantly, mere "random, fortuitous, or attenuated contacts" with the forum is not enough to establish personal jurisdiction. *Burger King Corp.*, 741 U.S. at 475 (quotations and citations omitted).

As a preliminary matter, Defendant's contract with a Utah corporation, "standing alone," is insufficient to satisfy the minimum contacts inquiry. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) ("A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."). This

9

is especially true where the performance of the contract occurs outside the forum state. *See, e.g.*, *G & G Int'l, LLC v. Camsing Co.*, No. 09-cv-00366, 2010 WL 466812, at *4 (D. Colo. Feb. 9, 2010). The touchstone of the inquiry in connection with the contract is whether Defendant purposefully directed its activities towards residents of Utah. The court cannot say that it did.

Aside from the transactions at issue, Defendant maintains no connection with the state. Defendant does not have an office, employees, or bank account in Utah, does not own real property in Utah, and does not have an agent in Utah. Plaintiff conducted its own online research and initiated contact with Defendant of its own volition. Defendant's website did not advertise to or target markets exclusive to Utah. In fact, Plaintiff's contract was one of the only Utah sales contracts Defendant has had. For the past 20 years, 97% of Defendant's sales were to businesses located in states or other countries other than Utah.

The purchase orders were sent to Wisconsin as well as executed in Wisconsin. The product was manufactured in Wisconsin and shipped from Wisconsin. Although Defendant sent a sales representative to discuss the continuation of the relationship in February 2018, the court does not find this single meeting sufficient to give rise to personal jurisdiction as the one Utah meeting was not related to either the formation or the alleged breach of the contract. It is undoubtedly clear that Defendant entered into a contract with a Utah corporation, and engaged in communications and contacts with Utah that one might reasonably expect when servicing such a contract; however, it is equally clear that nothing in the contract contemplated performance of any services to occur in Utah. Details regarding final destination of the spools were not communicated to Defendant, and the court is not convinced that Defendant's communications

with Kraken adequately denotes Defendant knew or should have known that the products were going to be used exclusively or primarily in Utah.

The court does not find persuasive Plaintiff's argument that by establishing a business relationship with, and providing its products to, a known Utah company, Defendant incorporated itself into Utah commerce via Plaintiff's downstream sales. The inquiry of focus should not be on Plaintiff's connection with the state, but rather on Defendant's conduct with the state. *See Walden v. Fiore*, 571 U.S. 277 (2014). Indeed, "*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state," *Rockwood Select v. Devine Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014), and therefore, Plaintiff's reliance on its own Utah connections is misguided. Similarly, knowledge that injury will be felt in the forum state alone is insufficient to establish purposeful direction. *See Dudnikov,* 514 F.3d at 1077.

The court concludes that the record does not indicate that Defendant undertook activities in Utah other than those associated with the ordinary administration of a contract with Utah company. The court agrees with the logic that

> [t]o hold that these ordinary acts of administering [a] contract gives rise to personal jurisdiction would contradict the basic proposition in *Burger King* that merely entering into a contract with a forum resident is insufficient to give rise to personal jurisdiction; it makes little sense to say that entering into a contract is not enough, but performing the types of actions that one can reasonably expect contracting parties to do is enough.

*G & G Int'l*, 2010 WL 466812, at *4.

In sum, the court finds that Defendant lacks sufficient minimum contacts such that the court may exercise personal jurisdiction over Defendant. Because Plaintiff has failed to clear the

minimum contacts hurdle, it is unnecessary for the court to evaluate the other requirements of specific personal jurisdiction.

### C. Venue and Tort Claims

The court lacks personal jurisdiction over Defendant; therefore, the court declines to determine whether the District of Utah is the proper venue for this litigation or whether Plaintiff's tort claims are barred by the economic loss rule.

### CONCLUSION

Defendant's Motion to Dismiss is **GRANTED**.[8] This action is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

**IT IS SO ORDERED**.

DATED this 6th day of February, 2020
.

BY THE COURT:

_____
PAUL M. WARNER
Chief United States Magistrate Judge

---

[8] ECF No. 10.